**STATE FARM LIFE INSURANCE COMPANY, Appellant,**

**v.**

**Ferial MOSHARAF and Narjes Vahdati, Appellees.**

No. 01–89–00344–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 2, 1990.

Rehearing Denied Aug. 30, 1990.

Tom Connally, Richard Josephson, Patrick Appel, Bennett Bartlett, & Travis S. Sales, Houston, for appellant.

Charles Orsburn, Susan W. Vandiver, and W. James Kronzer, Houston, for appellees.

Before MIRABAL, WARREN and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a default judgment rendered against appellant, State Farm Life Insurance Company. Appellant's first point of error complains that the trial court's refusal to grant a new trial was an abuse of discretion. Because we sustain the first point of error, we do not reach the remaining points, but reverse and remand.

Appellees, Ferial Mosharaf and Narjes Vahdati, filed suit on July 27, 1988, against Sykes Roofing & Contracting Company ("Sykes Roofing") and appellant, alleging property damage, emotional distress, and medical expenses incurred as a result of a fire at their Houston apartment unit in the Northwood Apartment complex, owned by appellant. Appellees alleged that appellant hired Sykes Roofing to repair their apartment building's roof, and that a roofer's torch ignited roofing materials on the building and "burned it completely."

On September 28, 1988, appellant's registered agent for service, Bruce Romig, was served in Austin, Texas, by certified mail, return receipt requested, with citation and a copy of appellees' original petition. No answer was filed. On November 1, 1988, the trial court entered an interlocutory default judgment in favor of appellees, with a hearing on damages to be held at a later date. On December 12, 1988, the trial court granted appellees' motion to dismiss Sykes Roofing without prejudice, and entered a final judgment in favor of appellees. The judgment awarded: (1) $298,159 in actual damages and $1,192,636 in exemplary damages to appellee Mosharaf; (2) $804,700 in actual damages and $3,218,800 in exemplary damages to appellee Vahdati; and (3) pre- and post-judgment interest.

On January 13, 1989, appellant filed a motion for new trial and to set aside default judgment. Appellant's motion, accompanied by affidavits from employees of appellant and its affiliated companies, set

out facts relied upon to prove that appellant's failure to answer was the result of an accident and mistake, and not conscious indifference.

Appellant's motion and affidavits asserted the following: Bruce Romig was a State Farm Mutual Automobile Insurance Company ("State Farm Auto") regional vice-president for the Texas region, was appellant's registered agent for service of process, and was served on September 28, 1988. That same day, Romig forwarded the citation and petition to Tommy Stinson, a State Farm Auto divisional claims superintendent, also in Austin. Under Stinson's supervision, the lawsuit was entered that day on State Farm Auto's "lawsuit log" used to keep track of incoming lawsuits; the next day, September 29, 1988, the petition was sent by interoffice mail to Charles Owens, State Farm Fire and Casualty Insurance Company's divisional claims superintendent, in Houston.

Owens received the petition in Houston on September 29, 1988, as evidenced by the acknowledgment receipt he signed and returned, which Stinson received on October 5, 1988. On October 6, 1988, Owen telecopied the petition to William J. Hess, State Farm Auto's senior assistant investment counsel, at State Farm's corporate office in Bloomington, Illinois; Hess received it that day.

By an interoffice routing slip, Hess directed the petition to Cynthia Weaver, a real estate administrator employed by State Farm Auto in its investment real estate department. Weaver is responsible for the operations of appellant's Northwood apartment complex. A copy of Hess's routing slip was attached as an exhibit to appellant's motion, and showed Weaver's name and Hess's notation, "Please make sure or [sic] liability carrier is aware of this. B.H."

Somewhere in the routing process between Hess and Weaver, the routing slip and petition were inadvertently filed before Weaver received them. Weaver never saw Hess' instruction or received a copy of the citation and petition, and did not learn of the lawsuit until she received the notice of

the final default judgment on December 28, 1988, 12 days after the judgment was signed.

Appellant's motion also set forth the defense that Sykes Roofing's negligence was the sole cause of appellees' losses, and asserted that a new trial in the cause would neither occasion delay nor cause prejudice to appellees.

Appellees filed a controverting plea, but presented no evidence that directly controverted the facts alleged and shown by appellant; the trial court overruled appellant's motion. Appellant filed a motion to reconsider and a motion to supplement the record on motion for new trial, accompanied by affidavits which further detailed the activities of various State Farm entities and appellant's reasons for not answering the original petition. Appellees objected that appellant's motions were untimely under Tex.R.Civ.P. 329b(b), citing *L.B. Foster Co. v. Glacier Energy, Inc.*, 714 S.W.2d 48, 49 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). The trial court declined to consider these filings and overruled the motion to reconsider; this appeal followed. We likewise decline to consider appellant's motions and affidavits that were not before the trial court at the time of the hearing on appellant's motion for new trial. *L.B. Foster*, 714 S.W.2d at 49.

## The *Craddock* Test

Appellant's first point of error alleges that the trial court abused its discretion in overruling appellant's motion for new trial and to set aside the default judgment. The standard for granting a motion for new trial and setting aside a default judgment was established in *Craddock v. Sunshine Bus Lines, Inc.*:

> A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to mistake or accident; provided the motion sets up a meritorious defense and is filed at a time when the granting thereof will occa-

sion no delay or otherwise work an injury to the plaintiff.

134 Tex. 388, 393, 133 S.W.2d 124, 126 (Tex.Comm'n App.1939, opinion adopted).

■ A motion for new trial is addressed to the trial court's discretion, which will not be disturbed on appeal absent a showing of abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex.1984). However, the trial court's discretion is not unbridled. *Craddock*, 134 Tex. at 388, 133 S.W.2d at 126. Because appellant's evidence at the motion for new trial hearing was undisputed, the issue on appeal is whether the trial court's exercise of discretion was erroneous as a matter of law. *Strackbein*, 671 S.W.2d at 39.

■ The trial court must test the motion for new trial and accompanying affidavits against the *Craddock* requirements, and grant a new trial if those requirements are met. *Strackbein*, 671 S.W.2d at 39.

### Conscious Indifference

■ The first prong of the *Craddock* test requires the determination of whether appellant's failure to answer was due to mistake or accident, or was the result of conscious indifference. *Craddock* and its progeny establish no criteria for applying this test, but "it is clear that courts have applied this prong liberally, and that each case depends on its own facts." *Gotcher v. Barnett*, 757 S.W.2d 398, 401 (Tex.App.— Houston [14th Dist.] 1988, no writ).

Mistakes virtually identical to those of appellant in the present case, all resulting in a failure to answer, have repeatedly been excused under *Craddock* as not being the result of conscious indifference or of bad faith. *See Craddock*, 134 Tex. at 393, 133 S.W.2d at 126 (insurance company, faced with numerous claims because of a flood, inadvertently placed defendant's citation with mail not requiring immediate attention); *Southland Paint Co. v. Thousand Oaks Racket Club*, 724 S.W.2d 809, 811 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (late answer filed due to staff shortage at defendant's insurance broker's office); *Evans v. Woodward*, 669 S.W.2d 154, 155 (Tex.App.—Dallas 1984, no writ)

(answer not filed due to confusion in attorney's office); *Drake v. McGalin*, 626 S.W.2d 786, 788 (Tex.Civ.App.—Beaumont 1981, no writ) (answer prepared by secretary presumably lost by volunteer exchange student who was assisting defendant's attorney as an "office boy"); *Dallas Heating Co. v. Pardee*, 561 S.W.2d 16, 19 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.) (suit papers inadvertently misplaced in defendant's office); *Leonard v. Leonard*, 512 S.W.2d 771, 773 (Tex.Civ.App.— Corpus Christi 1974, writ dism'd) (attorney misplaced file); *Continental Airlines, Inc. v. Carter*, 499 S.W.2d 673, 674 (Tex.Civ. App.—El Paso 1973, no writ) (secretary misplaced file); *Republic Bankers Life Ins. Co. v. Dixon*, 469 S.W.2d 646, 647 (Tex.Civ.App.—Tyler 1971, no writ) (attorney forgot to prepare answer when his secretary placed the file with his general files, rather than returning it to his desk for immediate action); *Reynolds v. Looney*, 389 S.W.2d 100, 101 (Tex.Civ.App.— Eastland 1965, writ ref'd n.r.e.) (citation mislaid in insurance company's office).

Appellees contend that appellant nevertheless failed to meet its burden of proof to establish that it did not act with conscious indifference, citing *Grissom v. Watson*, 704 S.W.2d 325, 327 (Tex.1986). There, quoting from *Harris v. LeBow*, 363 S.W.2d 184, 186 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r. e.), the supreme court stated: "A party who has been duly served with citation to appear and defend a cause asserted against him may not relieve himself of the burden of the judgment rendered unless he thoroughly demonstrates that he and his agent were free of negligence or conscious indifference." Appellees urge that Cynthia Weaver and appellant's affiants were not employees of appellant, but of affiliated State Farm companies; that appellant could not explain *how* the filing mistake occurred; and that appellant thereby failed to disprove its own negligence and that of its various agents.

We adopt the reasoning and conclusion of *Ferguson & Co. v. Roll*, where Justice Stewart carefully analyzed *Grissom v. Watson* and the court of civil appeals opin-

ion it relies on, *Harris v. LeBow* (as well as that opinion's cited authorities), and concluded:

> that this line of cases should properly be interpreted as holding that when a defendant's excuse is his reliance on a third party to file his answer ... he must prove that the third party's failure was due to accident or mistake and not intentional or the result of conscious indifference. We do not read these cases as establishing a rule that a defendant must show he and/or his agent were free from negligence.

*Roll,* 776 S.W.2d 692, 696–97 (Tex.App.—Dallas 1989, no writ). The court in *Roll* cited two sources as support: (1) the supreme court decision in *Cliff v. Huggins,* 724 S.W.2d 778, 779 (Tex.1987), that "makes no mention of a free of negligence standard with regard to the three-prong *Craddock* test;" and (2) "the in-depth analysis given this topic in the law review article of Pohl and Hittner, *Judgment by Default in Texas,* 37 SW.L.J. 421, 443, in which the authors unequivocally state that, under the *Craddock* test, 'The defendant's negligence will not preclude the setting aside of a judgment by default. In fact, the defendant's burden of demonstrating the accidental or mistaken nature of his failure to answer *may often result in an admission of negligence.*'" *Id.* at 697 (emphasis added).

The applicable test is not whether appellant was negligent in failing to answer. *Ivy v. Carrell,* 407 S.W.2d 212, 213 (Tex.1966); *Gotcher,* 757 S.W.2d at 402. Rather, the controlling factor is the "absence of a purposeful or bad faith failure to answer ... [and] even a slight excuse will suffice...." *Gotcher,* 757 S.W.2d at 401.

Appellees argue that appellant failed to "take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances," citing *Johnson v. Edmonds,* 712 S.W.2d 651, 652–53 (Tex.App.—Fort Worth 1986, no writ). In *Johnson,* the defendant failed to answer because he allegedly did not understand the nature of the citation served upon him; he simply read the "papers" and filed them.

The *Johnson* court held that inaction resulting from alleged ignorance amounted to evidence of conscious indifference. The equating of conscious indifference with non-action because of ignorance in *Johnson* is distinguishable from the facts before us. Here, no evidence suggests that the failure to answer resulted from a lack of understanding of the citation and petition.

Appellees further rely on *First Nat'l Bank v. Peterson,* 709 S.W.2d 276 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), which is likewise distinguishable. In *Peterson,* as in *Johnson,* the defendant took no action after receiving a writ of garnishment. *Id.* at 278–79. Both cases, *Johnson* and *Peterson,* involved inaction by the defendant after service, and are distinguishable from cases where a defendant took actions that resulted in accidental loss or misplacement of suit papers after service. *Roll,* 776 S.W.2d at 697–98.

To determine if appellant acted with intentional disregard or conscious indifference in not answering the suit, we must look to the knowledge and acts of appellant's employees and agents. *Strackbein,* 671 S.W.2d at 39; *Roll,* 776 S.W.2d at 697. Appellant's motion for new trial is supported by the affidavits of Romig, Stinson, Owens, and Hess, and establishes that nine days passed from the service of the citation and petition on Romig, on September 28, 1988, until Hess received and routed them on October 6, 1988, to Cynthia Weaver, whose duty it was to forward them to appellant's insurance carrier. Eighteen days remained within which appellant's answer could have been timely filed, had the petition not been misfiled.

At the motion for new trial hearing, Cynthia Weaver testified that she is a real estate administrator in State Farm Auto's investment department; that the department "handles property owned by any of the State Farm Insurance companies for investment purposes;" that she is responsible for asset management on the Northwood Apartments in Houston; that she "knew we had had a fire at Northwood and that [she] had a loss report in the file;" that appellant maintains a separate insurance

file for each property, and "any claim that we would have would go into that file." She testified that Craig Watson of the Risk Management Department called her on December 28, 1988, when a default notice was received, and asked if she had ever seen a petition concerning the Northwood fire; that she replied in the negative and said she would go look in the file and see if she could find anything. She went to the Northwood file and found appellees' petition and Hess' routing slip there, where "normal pieces of correspondence" would be, but not lawsuits, for which separate files would be set up. Weaver testified that in the normal course of business, her secretary would have picked up the routing slip and petition from a central location, date-stamped it, and put it in her basket where she would have seen it. She testified that she does not know how the petition got into the file or who put it there, that no one ever called her on the phone or talked to her about it before Watson's call, and that she first saw it on December 29, 1988. She testified that if she had received the routing slip and petition, she "would have done exactly what Bill [Hess] told me [on the routing slip] to do. I would have made sure our liability carrier received it, which I would have done through our Risk Management Department...."

Appellees did not offer testimony to controvert appellant's above testimony or affidavits at the motion for new trial hearing, but instead relied on their motion in opposition and affidavits, and argued that the facts appellant showed were insufficient to prove a lack of conscious indifference.

■■■ Where factual allegations in a movant's motion and affidavits are not controverted, the movant is entitled to have the default judgment set aside if the facts set forth negate intentional or consciously indifferent conduct. *Strackbein*, 671 S.W.2d at 38–39; *Dallas Heating Co.*, 561 S.W.2d at 19–20; *see also Ivy*, 407 S.W.2d at 214. In *Strackbein*, a fact situation similar to ours, the uncontroverted affidavits showed

that suit papers were inadvertently misplaced in the defendant's office, rather than mailed to his attorney. The supreme court held that this explanation constituted evidence that the defendant's failure to answer the citation was not the result of an intentional act or conscious indifference. *Strackbein*, 671 S.W.2d at 39.

We hold that while appellant's proof may indeed have shown negligence on the part of its agents, and did fail to explain *how* the filing mistake occurred, appellant nonetheless met its burden to prove that it did not timely answer the suit due to accident or mistake, and proved that its failure to answer was unintentional and not the result of conscious indifference.

### Meritorious Defense

■■■ Appellant urges that it established a meritorious defense, in accordance with the second requirement of the *Craddock* test,[1] which requires that a defendant set up a meritorious defense, not that it prove one. "The motion must *allege* facts which in law would constitute a defense to the cause of action asserted by the plaintiff, and must be supported by affidavits or other evidence proving prima facie that the defendant has such meritorious defense." *Ivy*, 407 S.W.2d at 214 (emphasis added). When a defendant meets this burden, a trial court cannot deny a motion for new trial based solely on consideration of counteraffidavits or contradictory testimony. *Guaranty Bank v. Thompson*, 632 S.W.2d 338, 340 (Tex.1982); *Harlen v. Pfeffer*, 693 S.W.2d 543, 546 (Tex.App.—San Antonio 1985, no writ); *Farley v. Clark Equip. Co.*, 484 S.W.2d 142, 147 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.). However, the sufficiency of the facts may be challenged. *See Dallas Heating Co.*, 561 S.W.2d at 20.

■■■ A meritorious defense is one that, if ultimately proved, will cause a different result when the case is tried again. *The Moving Co. v. Whitten*, 717 S.W.2d

---

1. Appellant contends that the recent cases of *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988), and *Lopez v. Lopez*, 757 S.W.2d 721 (Tex.1988), establish that it is not required to establish a meritorious defense. Nevertheless, appellant proceeds to argue that it has met *Craddock*'s requirements.

117, 120 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Harlen*, 693 S.W.2d at 546. However, a meritorious defense is not limited to one that, if proved, would lead to an entirely opposite result. It is sufficient if at least a portion of the judgment would not be sustained on retrial. *See, e.g., HST Gathering Co. v. Motor Serv., Inc.*, 683 S.W.2d 743, 745 (Tex. App. —Corpus Christi 1984, no writ) (defendant set up a prima facie defense as "to some, if not all, of the monies" awarded in the judgment); *Folsom Investments, Inc. v. Troutz*, 632 S.W.2d 872, 875 (Tex. App.— Fort Worth 1982, writ ref'd n.r.e.) (defendant set up a meritorious defense as to a lesser amount of damages; opposite result of total nonliability need not be proved).

■ Appellees claim that appellant's affidavit which asserted that a meritorious defense existed was merely conclusory and does not set forth specific facts to establish a prima facie defense of "sole cause." However, appellees' own live pleading alleged that Sykes Roofing negligently started the fire by leaving its roofing torch on the roof. In its motion for new trial, appellant alleged that the dismissed co-defendant, Sykes Roofing, was negligent in starting the fire, and that such negligence was the "sole cause" of the fire at the Northwood complex. Sole cause and a co-defendant's negligence are valid defenses in Texas. *See generally Ahlschlager v. Remington Arms Co.*, 750 S.W.2d 832, 833–36 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (discussing the current state of Texas law on "sole cause").

To support its defense of sole cause, appellant presented the affidavit of Jan Taylor, a claims adjuster for The Travelers Insurance Company, the liability carrier of Sykes Roofing. Taylor investigated the fire at the Northwood complex, and concluded that it was started by Sykes Roofing. When Taylor demanded reimburse-

ment from Sykes Roofing for damages, Sykes Roofing's liability carrier paid State Farm approximately $31,000.[2] Appellant alleged and presented a prima facie defense that the conduct of a third party was the sole cause of the accident. *See Ahlschlager*, 750 S.W.2d at 835. Appellants successfully raised a meritorious defense so as to satisfy *Craddock*.

### No Delay or Injury

■ The third prong of *Craddock* requires the appellant to demonstrate that at the time of the filing of the motion for new trial, its granting would not occasion a delay or otherwise work an injury to the appellees. *Craddock*, 134 Tex. at 393, 133 S.W.2d at 126. The two key questions in determining whether delay or injury will occur to the plaintiffs are: (1) whether the defendant offers to reimburse the plaintiffs for the costs in obtaining their default judgment; and (2) whether the defendant is ready, willing, and able to go to trial. *Angelo v. Champion Restaurant Equip. Co.*, 713 S.W.2d 96, 98 (Tex.1986). In its motion for new trial, and at the evidentiary hearing on the motion, appellant agreed to reimburse appellees for reasonable costs, attorneys' fees, and any other reasonable expenses incurred in obtaining the default judgment and in responding to the motion for new trial. Additionally, appellant agreed to proceed to trial immediately. In making these offers, appellant satisfied *Craddock*'s "no delay or injury" prong for a case where nothing in the record showed that a new trial would work an injury to the plaintiffs. *Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex.1987).

■ Once appellant tendered prima facie evidence that the granting of a new trial would not delay or otherwise injure appellees, the burden of going forward with proof of injury then shifted to appellees. *Cliff*, 724 S.W.2d at 779; *Burns v.*

---

**2.** Plaintiffs attempted to controvert appellant's meritorious defense with the affidavit of Phillip Munsen, the Travelers' claims examiner in charge of the claim made against Sykes Roofing. Munsen's affidavit stated that Travelers settled appellant's claim with no knowledge of appellant's negligence, and that the settlement was not an admission of liability on the part of Sykes Roofing. The trial court cannot deny the motion upon consideration of counteraffidavits or contradictory testimony. *Guaranty Bank*, 632 S.W.2d at 340; *Harlen*, 693 S.W.2d at 546; *Farley*, 484 S.W.2d at 147.

*Burns,* 568 S.W.2d 669, 672 (Tex.Civ.App. —Fort Worth 1978, writ ref'd n.r.e.). Appellees were required to come forward with evidence to show that they would be in a "worse condition in the event of a new trial than that in which [they] would have been had answer to [their] suit been timely filed." *Burns,* 568 S.W.2d at 672.

By three affidavits attached to their opposition to appellant's motion for new trial, appellees sought to prove that the granting of appellant's motion would "work an injury" to them. The three affidavits, from one of appellees' attorneys, from appellee Mosharaf, and from Dr. Sajadi, appellee Vahdati's psychiatrist, asserted: (1) appellee Vahdati could suffer severe emotional damage if she was required to testify in another proceeding; and (2) appellee Mosharaf would be delayed in fulfilling her desire to relocate to California, where she wants to go and take her mother, appellee Vahdati, "to get our lives back together."

Only Dr. Sajadi's affidavit presented competent medical evidence that Vahdati would be harmed by testifying at a retrial. However, appellees did not show that appellee Vahdati would have to testify in a retrial. The bulk of appellees' proof at the damages hearing consisted either of documentary evidence or the testimony of persons other than Vahdati, including appellee Mosharaf, Masoud Mosharaf, the brother and son of the two appellees, and Dr. Sajadi. Vahdati's limited testimony was cumulative to that of other witnesses. In short, Vahdati's testimony would be unnecessary to prove either a cause of action or damages as to either plaintiff at a retrial.

Accordingly, appellees' affidavits were insufficient to controvert appellant's prima facie showing that the granting of the motion for new trial would not "otherwise work an injury" upon appellees.

■ The amount of reasonable expenses that appellant must pay as a condition of new trial will be determined at an appropriate hearing for that purpose by the trial court, "which should consider not only travel expenses ... but also attorney's fees, and loss of earnings caused by trial attendance, expenses of witnesses, and any other expenses of plaintiff[s] arising from defendant's default." *United Beef Producers, Inc. v. Lookingbill,* 532 S.W.2d 958, 959 (Tex.1976) (footnote omitted).

We hold that appellant has successfully met all three of the *Craddock* criteria for setting aside a default judgment, and that the trial court abused its discretion in overruling appellant's motion for new trial.

Appellant's first point of error is sustained.

The judgment of the trial court is reversed, and the cause is remanded to the trial court.