April Ann O'CONNELL, Appellant,

v.

Edwin J. O'CONNELL, Appellee.

No. 6–92–073–CV.

Court of Appeals of Texas,
Texarkana.

Dec. 1, 1992.

J. Lindsey Short, Jr., Houston, for appellant.

Jolene Wilson-Glah, Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

April O'Connell appeals from a post-answer default judgment entered against her in a motion to modify in suit affecting the parent-child relationship filed by her former husband, Edwin O'Connell. The court ordered April to pay child support after she failed to appear at the trial. We affirm the judgment of the trial court.

April contends that the trial court erred in failing to grant her motion for a new trial (1) because she received inadequate notice of the trial setting and (2) because she satisfies the *Craddock*[1] test for granting a new trial in a default judgment case.

## BACKGROUND

April and Edwin O'Connell were divorced in 1976, and April was awarded custody of their two minor children, Lindy and Kelly. When April moved to California, she allowed the children to stay in Texas with Edwin. In 1983, the children moved to California to live with April, but the son, Kelly, returned to live with his father in 1990. A Harris County district court granted Edwin custody of Kelly, the only remaining minor child, on June 29, 1990. Kelly will become eighteen years of age in January of 1993. He is currently in high school.

On February 1, 1991, Edwin filed a motion to modify in suit affecting the parent-child relationship, and April filed a timely answer. The case had been set for trial four times. The August 5, 1991, and September 16, 1991, settings were continued upon April's motion. Her motion to continue the December 2, 1991, setting, however, was denied. Having not reached the case on December 2, the trial court granted Edwin's motion to have the case set for January 6, 1992. It is this final trial date which is at issue here.

On December 9, 1991, Gay Fowler, April's attorney at the time, filed a motion to withdraw as counsel. On December 16, 1991, Edwin's attorney filed a motion to set the trial for January 6, 1992, and notice was sent to Gay Fowler on the same day. The trial judge set a hearing on the motion to withdraw for December 19, but nothing in the record indicates whether the hearing was actually held and, if it was, what took place at the hearing. On December 20, Fowler received a trial setting request form from Edwin's attorney. On December 23, the order to withdraw as counsel was signed.

On December 29, April, who was away from California on business and personal matters, learned, in a telephone conversation with her daughter, that a trial setting request for January 6 had been faxed to her place of business. The next day April sent a letter to the trial court asking that

1. *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939).

the case be continued because her attorney had withdrawn and she would not be able to get to Houston by the trial date without hardship. The judge treated this letter as a motion for a continuance and denied it on January 6, 1991. After Edwin presented his case, the court entered a default judgment against April. Under the terms of the court order, April must pay $1,100 a month in child support, and she must pay fifty percent of all the health costs that Edwin incurs in taking care of Kelly. After a hearing on March 3, 1992, the trial court denied April's motion for a new trial after a hearing.

## ADEQUACY OF NOTICE

April first contends that she did not receive proper notice of the trial setting. Rule 245 of the Texas Rules of Civil Procedure governs the assignment of cases for trial. It says, in relevant part, that:

> The court may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties; provided, however, that when a case previously has been set for trial, the Court may reset said contested case to a later date on any reasonable notice to the parties or by agreement of the parties.

April contends that the notice afforded her in this case violates Rule 245 because she received it less than forty-five days before the trial date. The setting in question, however, was the fourth in this case and therefore the second clause of Rule 245 applies instead of the first. The second clause requires only "reasonable notice" and does not mention a minimum time period. In her brief, April argues that the second clause should be read as incorporating the reference in the first clause making reasonableness of service equivalent to at least forty-five days. This strained interpretation assumes that in a case which had been previously set the parties would need the same amount of time to prepare for the second setting. Also, if the Texas Supreme Court intended the first and second clauses to denote the same rule, the most logical

way to accomplish this would have been to eliminate the second clause which reads as an exception to the first clause. Therefore, a court should look to the facts of the individual case in determining what is reasonable notice for a second setting under Rule 245 and not be guided by an arbitrary time period.

April contends that the fact that she received some notice of the setting is irrelevant, citing *Clayton v. Newton*, 524 S.W.2d 368, 372 (Tex.Civ.App.–Fort Worth 1975, no writ). *Clayton*, however, is distinguishable from the present case because it involved a situation in which the defendant never received the original citation in the cause of action. It also involved the application of Rule 108 of the Texas Rules of Civil Procedure which prescribes a particular form and method for serving out-of-state defendants with notice of the suit. Since April complains about inadequate notice of the trial setting and not inadequate notice of the suit itself, Rule 108 and the *Clayton* case are not in point.

Two courts have held that the sending of a trial setting request, standing alone, is not sufficient in itself to provide a defendant with notice of a trial date. *Wilson v. Industrial Leasing Corp.*, 689 S.W.2d 496, 498 (Tex.App.–Houston [1st Dist.] 1985, no writ); *Chow v. Dole*, 677 S.W.2d 220 (Tex. App.–Houston [1st Dist.] 1984, no writ). In both of these cases, there was no showing that the defendants received notice of any kind or were aware of the settings. On the other hand, in *Mansfield State Bank v. Cohn*, 573 S.W.2d 181 (Tex.1978), the Supreme Court of Texas held that a setting request was adequate notice of a trial setting.

April contends that she did not receive adequate actual or constructive notice. She contends that the receipt of notice by Fowler, her former attorney, should not be imputed to her as constructive notice because no agency relationship existed between them at the time of receipt. Second, she contends that the telephone conversation with her daughter in which she learned of a facsimile copy of the trial setting request received at her place of business does not amount to adequate actual notice.

April contends that the trial setting request was inappropriately sent to Fowler because the court had held a hearing regarding Fowler's motion to withdraw as counsel on December 19, and Fowler did not receive the request until the December 20.[2] She further suggests that Fowler's filing of the Motion to Withdraw on December 9 and attendance at a subsequent hearing on December 19 had the effect of abandoning April, thus ending the agency relationship. Generally, notice to an attorney after he or she has withdrawn as counsel cannot be deemed notice to the client. *Langdale v. Villamil*, 813 S.W.2d 187, 190 (Tex.App.–Houston [14th Dist.] 1991, no writ). April also contends that on December 19 the trial court ordered that April be notified personally and not through counsel.

The order granting the motion to withdraw was not signed until December 23, three days after Fowler received the trial setting request. The order does not mention any hearing on the matter or that the order was granted before December 23. Neither does an otherwise fairly complete docket sheet reveal any action on the motion to withdraw before the signing of the December 23 order. The only indication that there was any kind of hearing on the motion to withdraw comes from a notation at the end of the motion signed by the judge setting a hearing for December 19, and by a letter sent to April telling her of Fowler's withdrawal also dated December 19. Nothing in the record before this Court indicates whether the hearing was actually held or whether any order was pronounced by the court on that date. Since the record does not show that Fowler's motion to withdraw was granted before December 23, the notice to Fowler on December 20 was constructive notice of the setting request to April.

In a letter dated December 19, 1991, April's now former attorney, Fowler, informed April of her motion to withdraw as counsel and additionally informed her that "they have reset the case for trial, but I have not received the trial setting request. I will fax it to you immediately upon my receiving it." Receipt of this letter should have put April on notice that her attorney had withdrawn, that she needed to find another, and opposing counsel was asking that the case be reset for trial. April received this letter on December 22, fifteen days before the trial date.

In her letter to the court dated December 31, 1991, April stated, "I just unofficially learned, was informed via phone, of the date of January 6, 1992 at 9:00 A.M., as the date of trial ... I respectfully regret, that I am unable to meet the Court date." This letter, in April's own words, fully acknowledges that she had actual notice of the date of the trial, at least seven days prior to the trial. The judge treated April's letter as a motion for continuance and overruled the motion. April also testified at the hearing on motion for new trial that she became aware of the trial setting on December 29.

Edwin contends that the trial setting request was sufficient notice under the local rules. However, those rules are not in the record before the court, and are not shown to have been approved by the Texas Supreme Court. *See Chow*, 677 S.W.2d at 221. But the record does reflect that April's attorney believed that this request was a notification of a trial setting, she communicated this to April, and April, by her letter and by her own testimony, showed that she accepted this as a notice of the trial and had actual knowledge of the trial date. April cannot now complain that she did not have actual notice when she had actual knowledge.

April had been initially scheduled to go to trial on December 2. The cause had been set for trial in each of the court's three previous terms, and a January set-

---

**2.** The trial setting request was sent to Fowler on December 16, and under the mailbox rule contained in Rule 21a of the Texas Rules of Civil Procedure, she can be presumed to have received it on December 19. Here, however, April put on evidence, as allowed by Rule 21a, showing that Fowler in fact received the document on December 20, and Edwin does not dispute this.

ting was probable. Given the circumstances of this case, actual knowledge eight days before the trial was reasonable under Rule 245 of the Texas Rules of Civil Procedure. This point of error is overruled.

## CRADDOCK ANALYSIS

■ In *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126, the Texas Supreme Court created a three-part test to guide trial courts in determining whether to grant a new trial in a default judgment context. The court stated:

> A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

The same standard should apply to all default judgments, including post-answer default judgments. *Lopez v. Lopez*, 757 S.W.2d 721, 722 (Tex.1988); *Cliff v. Huggins*, 724 S.W.2d 778 (Tex.1987). Therefore, in order to show that the trial court abused its discretion, April must show (1) that her failure to appear was not the result of conscious indifference on her part but was due to a mistake or accident, (2) that she has a meritorious defense, and (3) that the granting of the motion for a new trial would not delay or injure Edwin.

■ The trial court's ruling should not be disturbed unless we find an abuse of discretion. *Belcher v. Belcher*, 808 S.W.2d 202 (Tex.App.–El Paso 1991, no writ). And, since there were no findings of fact or conclusions of law requested or entered beyond those required by the Texas Family Code, the ruling of the trial court should be upheld on any legal theory which supports the decision and has a basis in the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex. 1977), *overruled on other grounds*, *Cherne Industries, Inc. v. Magallanes*, 763 S.W.2d 768, 770 (Tex.1989).

■ The first prong of the *Craddock* test should be applied liberally to favor the movant. In *Johnson v. Edmonds*, 712 S.W.2d 651, 652 (Tex.App.–Fort Worth 1986, no writ), the court defined "conscious indifference" as "something other than an intentioned failure to appear." The court further said that upholding the default judgment required that the defendant failed "to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances." In *Gotcher v. Barnett*, 757 S.W.2d 398 (Tex.App.—Houston [14th Dist.] 1988, no writ), the court said, "Since absence of a purposeful or bad faith failure to answer is the 'controlling fact,' ... even a slight excuse will suffice." *See also*, *Ferguson & Co. v. Roll*, 776 S.W.2d 692, 695 (Tex.App.–Dallas 1989, no writ) ("Some excuse, but not necessarily a good excuse, ... is enough ... to warrant setting aside a default judgment, so long as the act or omission causing the defendant's failure to answer was, in fact, accidental").

In *State Farm Life Ins. Co. v. Mosharaf*, 794 S.W.2d 578, 584 (Tex.App.–Houston [1st Dist.] 1990, writ denied), the court said, "Where factual allegations in a movant's motion and affidavits are not controverted, the movant is entitled to have the default judgment set aside if the facts set forth negate intentional or consciously indifferent conduct." April contends that because her testimony at the hearing on the motion for a new trial was uncontroverted and because that testimony established at least a slight excuse, the default judgment should be set aside. She specifically points to her responses to questions posed by her counsel as establishing the necessary slight excuse:

> Q All right. And when you found out that the case had been set, what did you do?
>
> A Immediately I wrote a letter.
>
> Q To whom?
>
> A To the Judge of the court—
>
> Q All right.
>
> . . . .
>
> A —trying to explain to him why I could not be here. It was absolutely almost impossible.

Q Where were you?

A I was in New York.

Q And did you make an effort to get plane reservations on the 29th, 30th, 31st, any of those days, to go to California and get your file?

A I did try.

This passage basically lays out April's excuse for failing to appear for the trial. She contends that a number of factors combined to prevent her from making the appearance: It was the holiday season and she could not exchange her airline ticket without incurring a penalty; she was in New York for business and personal reasons and could not change her plans without incurring financial hardship; her file on the case was in California and she would have to fly from New York to California and then to Texas; her financial status was desperate; her attorney had quit and she needed time to find a new attorney and familiarize him or her with the case.

■ In the *Johnson* case, the court applied the test of whether the excuses fall short of what a person of reasonable sensibilities would do under the same or similar circumstances. After laying down the reasonable sensibilities test, the court affirmed a default judgment where the appellant "neither sought help nor advice nor made inquiry about the import of the 'papers' he had received." *Johnson*, 712 S.W.2d at 653. April was aware that her case was set for trial on December 2, 1991. This obliged her to prepare for trial for that date, and even though the case was not reached, she should have been ready on that date. By a letter of December 9 from her attorney, April learned that she was withdrawing from the case. Although April contends that her attorney abandoned her, there is no showing in the record of why her attorney withdrew. There is also no showing that April attempted to find another attorney. Furthermore, her attorney had advised her that the case had been reset, but there is no showing that April made any inquiry about the status of the case or about the time the case had been set for trial. April was aware of the situation that existed before she left her home in California to go to New York. Her only action was to write a letter to the judge asking that the case be continued, and she made no further inquiry as the trial date came and went. Since her motion for a continuance regarding the previous trial setting had been rejected, it could be argued that she should not have had any strong expectation that this one would be granted.

April filed four motions for continuance and failed to appear at trial at a time when Kelly, at seventeen, was fast approaching the age of legal majority. The trial court had a right to consider the avoidance of paying child support as a possible motive and that each delay left a period of time in which no child support was being paid. The trial court could have considered this in determining whether April did not appear because of conscious indifference.

We find that the trial court could have properly found that April did not act as a reasonable person would have in preparation for the trial date and that she exhibited conscious indifference toward the proceedings. Thus, we find that she failed to meet the first prong of the *Craddock* test. Although the failure to meet any prong of the *Craddock* test is dispositive against April, we shall address the remaining two prongs.

■ The second prong of the *Craddock* test requires that April demonstrate that she has a meritorious defense warranting a new trial. To be meritorious a defense need not lead to an entirely opposite result if proven; it is sufficient if it could prevent at least a portion of the judgment from being sustained in the new trial. *State Farm*, 794 S.W.2d at 585; *Gotcher*, 757 S.W.2d at 403.

April contends that "the child support guideline factors should have been considered as a defense to the action at bar." TEX.FAM.CODE ANN. § 14.05(a) (Vernon Supp.1992) requires that courts ordering child support payments "shall be guided by the child support guidelines contained in Sections 14.052 through 14.058." TEX.FAM. CODE ANN. § 14.055(c) (Vernon Supp.1992) covers situations in which the obligor's net resources exceed $4,000 a month. It pro-

vides that a court is presumed to apply the support guidelines in regard to the first $4,000 of the monthly net resources, but the court "may order additional amounts of child support as proven, depending on the needs of the child at the time of the order."

 The trial court computed April's monthly income to exceed $4,000 a month by at least $350 per month. It then found that Kelly, the child in question, suffered from severe mental health problems which were due, in part, to April's conduct. The court also found that April had failed to support Kelly or visit him for well over a year, and that she had failed to aid Edwin in supplying health insurance for Kelly. The court then ordered April to pay $1,100 a month in child support.[3]

The guidelines suggest that 20% of an obligor's monthly income up to $4,000 should be awarded to support one child. Tex.Family Code § 14.055 (Vernons 1992 supp.). Since April's income exceeds $4,000 a month she should pay at least $800 a month in child support under the guidelines. However, as pointed out above, the guidelines allow a trial court to award additional sums of child support when the needs of the child so dictate. The trial court found that Kelly suffered from severe mental health problems, Edwin testified that Kelly was seeing a mental health professional on a regular basis, and Edwin had hoped to send Kelly to a boy's ranch but could not afford to do so. This was a factor that the trial court could consider in requiring child support of more than $800 per month. The court had before it in the default judgment proceedings both past federal income tax forms filed by April and bank statements regarding her account in California.

 April urges two additional meritorious defenses. First, she suggests that since Kelly's emancipation for child support purposes may be delayed due to failure in school, the amount of child support is unreasonable because it has no specific date of termination. This argument does not present a defense on the merits. If anything, Kelly's academic difficulties weigh in favor of ordering greater child support.

 Lastly, April contends that the trial court should have considered the fact that she still supports the older child of the marriage, Lindy, who has reached her majority. Even if the trial court wanted to consider this fact, April did not present it to the court in support of her motion for new trial. In her motion for a new trial, April said that she is currently supporting one child of the marriage without assistance from Edwin. April offered no affidavits, testimony, or other evidence at the hearing on the motion for a new trial regarding her support of Lindy. *See Ivy v. Carrell,* 407 S.W.2d 212 (Tex.1966).[4] Under the *Ivy* case, April has waived this meritorious defense argument. Since she has not otherwise established a meritorious defense, April does not satisfy the second prong of the *Craddock* test.

April contends that she has no duty to show such a defense because notice of the trial date was inadequate. In *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988), the United States Supreme Court set aside a Texas default judgment case without requiring a meritorious defense, saying:

The Texas court held that the default judgment must stand absent a showing of a meritorious defense to the action in which judgment was entered without

---

3. The trial court stated findings in its order regarding April's net resources and the reasons for awarding a sum above the amount set forth by the child support guidelines pursuant to Tex. FAM.CODE ANN. § 14.057 (Vernon Supp.1992), which requires such findings as an exception to TEX.R.CIV.P. 299a, which says that findings of fact should not be recited in the judgment itself.

4. The Court in *Ivy v. Carrell,* 407 S.W.2d 212, 214 (Tex.1966), explained that:

We note again the specific language of *Craddock* that a new trial should be granted to a

defaulting defendant if his motion "*sets up* a meritorious defense." This does not mean that the motion should be granted if it merely *alleges* that the defendant "has a meritorious defense." The motion must allege *facts* which in law would constitute a defense to the cause of action asserted by the plaintiff, and must be supported by affidavits or other evidence proving prima facie that the defendant has such meritorious defense ... This much is necessary to prevent the reopening of cases to try out fictitious or unmeritorious defenses.

proper notice to appellant, a judgment that had substantial adverse consequences to appellant. By reason of the Due Process Clause of the Fourteenth Amendment, that holding is plainly infirm.

*Id.* 485 U.S. at 86, 108 S.Ct. at 900, 99 L.Ed.2d at 82.

■ In *Lopez*, 757 S.W.2d at 722–23, the Court, applying *Peralta*, said that in a post-answer default judgment case a defendant who has received no notice cannot be required to present a meritorious defense in his motion for a new trial. Specifically, the court stated, "Because the record here establishes that [the defendant] had no *actual or constructive* notice of the trial setting, the lower courts erred in requiring him to show that he had a meritorious defense as a condition to granting his motion for a new trial." *Lopez*, 757 S.W.2d at 723 (emphasis added). Therefore, regardless of the broad language of the *Peralta* case quoted above, the Texas Supreme Court has interpreted it as only abolishing the meritorious defense requirement in cases where there was *no* notice. Furthermore, *Peralta* itself involved a case in which no evidence existed to show the defendant received any notice whatsoever. The facts of both cases are therefore distinguishable from the present case in which April received actual notice at least eight days before the trial date. In order to receive a new trial, April needed to present a meritorious defense, and this she has failed to do.

■ The final prong of the *Craddock* test requires that April file her motion for a new trial "at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff." *Craddock*, 133 S.W.2d at 126. In order to comply with the dictates of this prong, April must have shown at the hearing on the motion for a new trial that she was "ready, willing and able to go immediately to trial," and she should have made an offer to reimburse Edwin for the expenses he incurred in obtaining the default judgment. *Stone Resources, Inc. v. Barnett*, 661 S.W.2d 148, 152 (Tex.App.–Houston [1st Dist.] 1983, no writ).

■ The default judgment was entered against April on January 17, 1992, and she filed her motion for a new trial twenty-eight days later. At the hearing on the motion, April's counsel, Lindsey Short, requested that the trial court set the case for retrial "at any time after the expiration of 30 days." Plainly, April has not shown that she was "ready, willing and able" to proceed with trial immediately as required by the third prong of *Craddock*. This is true despite almost five months having passed since the case was first set for trial and forty-five days having passed since the trial court entered post-answer default judgment against her.

■ Furthermore, April contends that she should not be required to make an offer to pay Edwin's default judgment expenses because Edwin has not been paying his attorney's fees in this case. At the default judgment proceeding, Edwin testified that he had paid about $300 out of an estimated $2,000 of incurred attorney's fees. The fact that Edwin still owes his attorney fees has no effect on April's duty to offer to pay them under the *Craddock* case. The record does not reveal how much of this expense went toward obtaining the default judgment, but it should not be presumed that the trial court incorrectly calculated attorney's fees.

Because April did not offer to go to trial immediately at the hearing on the motion for a new trial and because April did not offer to pay Edwin's default judgment expenses, we find that April has failed to satisfy both parts of the third prong of the *Craddock* test. We therefore overrule this point of error.

Because we find that April received adequate and reasonable actual notice of the date of the trial, and because April has failed to satisfy the *Craddock* test in several ways, we affirm the judgment of the trial court.