Linda BEAUMONT, Roni Beaumont
Bellhouse, and Beaumont Ranch,
L.L.C., Appellants,

v.

Tanya BASHAM, Appellee.

No. 10–05–00362–CV.

Court of Appeals of Texas,
Waco.

Aug. 30, 2006.

Rehearing Overruled Sept. 26, 2006.

Robert S. Morris, Hammerle Finley, Denton, for appellants.

William O. Wuester, Douglas Wuester & Stenholm P.C., Fort Worth, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Tanya Basham filed suit against Linda Beaumont, Roni Beaumont Bellhouse, and Beaumont Ranch, L.L.C., alleging causes of action for defamation, invasion of privacy, theft, wrongful termination, sexual

harassment, and intentional infliction of emotional distress. A jury found in Basham's favor on the defamation, invasion of privacy, and theft claims and awarded her $260,000 in actual damages, $30,000 in additional/exemplary damages, and $40,000 in attorney's fees. Appellants contend in ten issues that:

(1) the court abused its discretion by denying the Appellants' special exceptions;

(2) the court erred by submitting a single question in the charge for multiple allegations of defamatory statements;

(3) there is no evidence or factually insufficient evidence to support the award of damages for past and future mental anguish;

(4) there is no evidence to support the award of damages for loss of reputation;

(5) there is no evidence to support the amount of damages awarded under the Texas Theft Liability Act;

(6) the court erred by awarding additional damages under the Theft Liability Act or, alternatively, by awarding additional damages in excess of $1,000;

(7) there is no evidence that Beaumont committed an invasion of privacy and the court erroneously permitted a double recovery for theft and invasion of privacy because Basham suffered the same injury from the invasion of privacy as from the theft;

(8) the court erred by committing several errors which resulted in "cumulative harm" because the court allowed "the case to be tried generally on the issue of whether or not Linda Beaumont was a bad person";

(9) there is no evidence or factually insufficient evidence to support the attorney's fee award; and

(10) the court erred by the manner in which it computed prejudgment interest.

We will affirm in part and reverse and render in part.

## Background

Basham was the bookkeeper for the Beaumont Ranch. Because of financial difficulties at the Ranch, Linda Beaumont, a co-owner of the Ranch, told Basham to give vendors false information about when they would be paid. After several months in an unpleasant work environment, Basham gave two weeks' notice. About two weeks after Basham's departure, her nephew (and employee of the Ranch) Bryan Williams broke into her house at Beaumont's direction, looking for items belonging to the Ranch which Beaumont claimed Basham had stolen. Williams apparently broke into Basham's home on four separate occasions, being accompanied on the last occasion by Roni Beaumont Bellhouse, Beaumont's daughter.

Beaumont filed a report with the Sheriff's Department alleging that Basham had stolen one million dollars from the Ranch. An investigation was conducted, but no charges were ever brought against Basham.

Several witnesses testified about various statements which were made around the community or to others by telephone regarding alleged embezzlement by Basham and Basham's alleged involvement in a sexual relationship with a minor.

The court granted Appellants' motion for directed verdict as to Basham's claims for wrongful termination, and intentional infliction of emotion distress. The court also granted Basham's oral motion to dismiss her sexual harassment claim against the Ranch.

The jury found that Beaumont had slandered Basham but failed to find that Bellhouse had. The jury found that both Beaumont and Bellhouse had committed

theft and invasion of privacy and had acted with malice. The jury awarded damages on the slander claim of $50,000 for loss of reputation, $100,000 for past mental anguish, and $25,000 for future mental anguish. The jury awarded damages on the theft claim of $25,000 against Beaumont and $10,000 against Bellhouse. The jury awarded damages on the invasion of privacy claim of $25,000 against Beaumont and $25,000 against Bellhouse. The jury awarded additional/exemplary damages against Beaumont of $10,000 for slander, $10,000 for theft, and $10,000 for invasion of privacy. The jury failed to find that Bellhouse should pay additional/exemplary damages. The jury awarded attorney's fees of $40,000 on Basham's theft claim.

## Invasion of Privacy

Appellants contend in their seventh issue that (1) there is no evidence that Beaumont committed an invasion of privacy and (2) the court erroneously permitted a double recovery for theft and invasion of privacy because Basham suffered the same injury from the invasion of privacy as from the theft.

■ When we conduct a no-evidence review, we must determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.*

■ The elements of a claim for invasion of privacy are (1) the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs; and (2) the intrusion would be highly offensive to a reasonable person. *See Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex.1993) (citing RESTATEMENT (SECOND) OF TORTS

§ 652B (1977)); *Russell v. Am. Real Estate Corp.*, 89 S.W.3d 204, 212 (Tex.App.-Corpus Christi 2002, no pet.); *see also Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex.App.-Tyler 2005, pet. denied).

The jury found that Beaumont committed an invasion of privacy and also engaged in a conspiracy to commit an invasion of privacy. Appellants do not challenge this conspiracy finding or the finding the Bellhouse committed an invasion of privacy.

■ "Once a conspiracy is proven, each co-conspirator 'is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination.'" *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 926 (Tex.1979) (quoting *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550, 559 (1937)); *accord Operation Rescue–Nat'l v. Planned Parenthood of Houston & Se. Tex.*, 975 S.W.2d 546, 561 (Tex.1998); *Goldstein v. Mortenson*, 113 S.W.3d 769, 779 (Tex.App.-Austin 2003, no pet.). Thus, if Bellhouse is liable for an invasion of privacy, then Beaumont is liable as well. *See id.*

Appellants contend that they are not liable for invasion of privacy because Basham suffered the same injury from the invasion of privacy as from the theft. We disagree.

■ Under the "one satisfaction rule," Texas law prohibits a "double recovery." *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex.2000); *Betts v. Reed*, 165 S.W.3d 862, 873 (Tex.App.-Texarkana 2005, no pet.); *Baribeau v. Gustafson*, 107 S.W.3d 52, 60 (Tex.App.-San Antonio 2003, pet. denied). "This rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury." *Crown Life Ins.*, 22

S.W.3d at 390. Here, Appellants contend the latter applies.

■ Nevertheless, if a plaintiff pleads alternate theories of liability, a judgment awarding damages on each alternate theory may be upheld if the theories depend on separate and distinct injuries and if separate and distinct damages findings are made as to each theory. *Baribeau*, 107 S.W.3d at 60 (citing *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex.1987)); *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 80 (Tex.App.-El Paso 1998, pet. denied); *Borden, Inc. v. Guerra*, 860 S.W.2d 515, 528 (Tex.App.-Corpus Christi 1993, writ dism'd by agr.).

■ Here, Basham alleged that an invasion of privacy was committed each time Williams and/or Bellhouse unlawfully entered her home to search for property belonging to the Ranch. The injuries Basham suffered from these invasions of her privacy arose from these intrusions upon her "solitude, seclusion, or private affairs." *See Valenzuela*, 853 S.W.2d at 513; *Clayton*, 190 S.W.3d at 696; *Russell*, 89 S.W.3d at 212; RESTATEMENT (SECOND) OF TORTS § 652B.

Conversely, the injuries Basham suffered because of the thefts of property from her home arose from the "unlawful appropriations" of her property. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 134.002(2) (Vernon 2005).

The only element of damages addressed in the court's charge with respect to Basham's invasion of privacy and theft claims is mental anguish. The court expressly instructed the jury in the charge to not include in the award of damages for invasion of privacy "an amount for mental anguish, if any, arising from theft." The court provided a similar instruction with the damages question for Basham's theft claim.

Therefore, because Basham suffered separate and distinct injuries from the invasions of privacy and from the thefts and because the jury made separate and distinct damages findings as to each theory, we hold that there was no double recovery. *See Baribeau*, 107 S.W.3d at 61; *Borden*, 860 S.W.2d at 529.

Accordingly, we overrule Appellants' seventh issue.

### Mental Anguish

■ Appellants contend in their third issue that there is no evidence or factually insufficient evidence to support the jury's award of $210,000 in damages for past and future mental anguish.

... [A]n award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine. Such evidence, whether in the form of the claimants' own testimony, that of third parties, or that of experts, is more likely to provide the factfinder with adequate details to assess mental anguish claims. Although we stop short of requiring this type of evidence in all cases in which mental anguish damages are sought, the absence of this type of evidence, particularly when it can be readily supplied or procured by the plaintiff, justifies close judicial scrutiny of other evidence offered on this element of damages.

When claimants fail to present direct evidence of the nature, duration, or severity of their anguish, we apply traditional "no evidence" standards to determine whether the record reveals any evidence of "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embar-

rassment, or anger" to support any award of damages.

*Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995); *accord Bentley v. Bunton,* 94 S.W.3d 561, 606 (Tex.2002).

Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded. We disagree with the court of appeals that "[t]ranslating mental anguish into dollars is necessarily an arbitrary process for which the jury is given no guidelines." While the impossibility of any exact evaluation of mental anguish requires that juries be given a measure of discretion in finding damages, that discretion is limited. Juries cannot simply pick a number and put it in the blank. They must find an amount that, in the standard language of the jury charge, "would fairly and reasonably compensate" for the loss. Compensation can only be for mental anguish that causes "substantial disruption in . . . daily routine" or "a high degree of mental pain and distress." There must be evidence that the amount found is fair and reasonable compensation, just as there must be evidence to support any other jury finding. Reasonable compensation is no easier to determine than reasonable behavior—often it may be harder— but the law requires factfinders to determine both. And the law requires appellate courts to conduct a meaningful evidentiary review of those determinations.

*Bentley,* 94 S.W.3d at 606 (quoting *Saenz v. Fid. & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996)) (citations omitted).

Here, the jury awarded Basham $100,000 in damages for past mental anguish on the defamation claim and $25,000 in damages for future mental anguish on this claim. The jury awarded Basham $25,000 in mental anguish damages against Beaumont and $10,000 against Bellhouse on the theft claim. Finally, the jury awarded $25,000 in mental anguish damages against Beaumont and $25,000 against Bellhouse on the invasion of privacy claim.

Appellants concede that Basham is entitled to at least "nominal damages" for the defamatory statements but argue that there is no evidence or factually insufficient evidence "justifying more than a nominal award." They also contend that the award lacks evidentiary support because Basham failed to differentiate in her testimony among the symptoms of mental anguish caused by the defamation, those caused by the theft, and those caused by the invasion of privacy.

 Basham testified that, after she was fired, she went to her son's basketball game and sat by a friend, but her friend "just got up and walked away." She noticed that "[e]verybody's neck was breaking to look at me." This caused her to feel "very humiliated and embarrassed." Because of this, she left the bleachers and waited in the car for the game to be over. She experienced similar situations at other basketball games and at her son's baseball games. There was "a lot of whispering." She was "totally devastated" when Williams told her that Beaumont had told him to spread the rumors about her in town.

Because of the embarrassment and humiliation, Basham stopped going to town as much as possible. She stopped going to her children's school functions, and she shopped for groceries in another town. She started having anxiety attacks on those occasions when she did go to town, experiencing shortness of breath and an accelerated heart rate. She had "many" sleepless nights and continued to experience sleeping problems up to the date of

trial. She thinks about it "[e]very minute of my life." Basham testified that her "heart drops" whenever she hears a knock on her door because she is "thinking what else is Ms. Beaumont going to do to me."

Basham ultimately moved to another town because she "couldn't take living there anymore." This caused separation from her sons because they chose to stay with their father and remain in their hometown. Her oldest son moved back in with her about three years later. Her youngest son moved back in for about six months but ultimately returned to his father's home. She is still "struggling" with the consequences of her decision to move.

Basham is no longer able to trust people. She feels "very uncomfortable" in social settings. She has "basically become isolated" and does not participate in social events held at her new employer's location. Her dating life has been significantly affected. She is afraid to get close to people because she is afraid they will hurt her.[1] She sought counseling for a period of time but could not afford to continue it.

The context of Basham's testimony that her "heart drops" whenever she hears a knock on the door indicates that Basham was referring here to the occasion when sheriff's deputies came to search her home in response to Beaumont's false report of embezzlement.

With regard to the break-ins, Basham testified that her dating life had been adversely affected because it is difficult to start a new relationship "with as much emotions as I'm having to deal with." Basham testified, "This experience just consumes me. It's like this is just all that is on my mind all the time."

Basham testified that her feeling and anxieties have not improved in the four years since the Appellants committed the wrongful acts against her.

As with the plaintiff in *Bentley*, "[t]he record leaves no doubt that [Basham] suffered mental anguish as a result of [the defamatory] statements." *See Bentley*, 94 S.W.3d at 606. Other courts have likewise held that testimony similar to that given by Basham constitutes some evidence and/or factually sufficient evidence to support an award of damages for past mental anguish. *See, e.g., Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 350–51 (Tex.App.-Dallas 2004, pet. denied); *Ramirez v. Fifth Club, Inc.*, 144 S.W.3d 574, 591 (Tex.App.-Austin 2004), *rev'd in part on other grounds*, 196 S.W.3d 788 (Tex. 2006); *Cram Roofing Co. v. Parker*, 131 S.W.3d 84, 92–93 (Tex.App.-San Antonio 2003, no pet.).

As the Supreme Court has held, the record must also contain evidence that the amount of damages awarded for mental anguish is "fair and reasonable." *See Bentley*, 94 S.W.3d at 606 (quoting *Saenz*, 925 S.W.2d at 614). Here, the jury awarded $100,000 for past mental anguish on Basham's slander claim. Texas courts have concluded that comparable awards were "fair and reasonable" based on testimony like Basham's. *See, e.g., Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 580–81 (Tex.App.-Austin 2003, no pet.); *Ysleta Indep. Sch. Dist. v. Monarrez*, 170 S.W.3d 122, 128–29 (Tex. App.-El Paso 2002), *rev'd on other grounds*, 177 S.W.3d 915 (Tex.2005) (per curiam). We likewise hold that the record contains some evidence and factually sufficient evidence to support the jury's determination that $100,000 is "fair and reason-

---

1. Basham explained that the pain and anxiety she has experienced as a result of the wrongful acts committed against her is different than that she experienced after her divorce because, after the divorce, she "started going out" again.

able compensation" for the past mental anguish Basham suffered because of the defamatory statements.

Basham's testified that her embarrassment, anxiety and other symptoms continued during the four years leading up to the time of trial and that there has been no improvement. This constitutes some evidence and factually sufficient evidence to support an award of damages for future mental anguish. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797–98 (Tex. 2006).

The jury awarded $25,000 for future mental anguish on Basham's defamation claim. We hold that the record contains some evidence and factually sufficient evidence to support the jury's determination that $25,000 is "fair and reasonable compensation" for the future mental anguish Basham will suffer because of the defamatory statements. *See Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 407, 423 (Tex.App.-Corpus Christi 2003), *rev'd on other grounds*, 164 S.W.3d 386 (Tex.2005) (per curiam); *see also Fifth Club*, 196 S.W.3d at 797–98.

With regard to Basham's claims for theft and invasion of privacy, she specifically testified that the break-ins have directly affected her dating life and that she is "consumed" by these intrusions and they are constantly on her mind. Although Basham did not testify that she was afraid to live in her home after the break-ins or that the loss of her family photos shocked or devastated her, the jury could consider her testimony about the emotional impact of the break-ins together with her testimony about the emotional impact of the defamatory statements and conclude that the break-ins caused additional injury.

Accordingly, we hold that the record contains some evidence and factually suffi-cient evidence to support the jury's award of mental anguish damages for Basham's theft and invasion of privacy claims. *See Royal Maccabees Life Ins.*, 146 S.W.3d at 350–51; *Ramirez*, 144 S.W.3d at 591; *Cram Roofing Co.*, 131 S.W.3d at 92–93.

The jury awarded Basham $35,000 in mental anguish damages for theft and $50,000 for invasion of privacy. We likewise hold that the record contains some evidence and factually sufficient evidence to support the jury's determination that these amounts are "fair and reasonable compensation" for the mental anguish Basham suffered because of the theft and invasion of privacy. *See Houston Livestock Show & Rodeo*, 125 S.W.3d at 580–81; *Monarrez*, 170 S.W.3d at 128–29.

Thus, we overrule Appellants' third issue.

### Texas Theft Liability Act

Appellants contend in their fifth issue that there is no evidence to support the amount of damages awarded under the Texas Theft Liability Act. More specifically, they contend in this issue that Basham offered no evidence of the value of the property stolen, cannot recover mental anguish damages under the Act, and is entitled to no more than nominal damages. Appellants contend in their sixth issue that the court erred by awarding additional damages under the Theft Liability Act or, alternatively, by awarding additional damages in excess of $1,000.

A person who commits theft is civilly liable under the Act "for the damages resulting from the theft." TEX. CIV. PRAC. & REM.CODE ANN. § 134.003(a) (Vernon 2005). A "person who has sustained damages resulting from theft may recover . . . the amount of actual damages found by the trier of fact and, in addition to actual damages, damages awarded by the trier of

fact in a sum not to exceed $1,000." *Id.* § 134.005(a)(1) (Vernon 2005).

■■■ The Act provides for the recovery of "actual damages." *Id.* § 134.005(a)(1). Because the Act does not further define "actual damages," we hold that "actual damages" under the Act are those recoverable at common law. *Cf. Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 816 (Tex.1997) ("actual damages" recoverable under DTPA "are those damages recoverable under common law"); *Matheus v. Sasser,* 164 S.W.3d 453, 458 (Tex.App.-Fort Worth 2005, no pet.) (same); *Houston Livestock Show & Rodeo,* 125 S.W.3d at 582 (same).[2]

As previously indicated however, the only element of damages for theft authorized by the charge is mental anguish. Although the parties spend much of their argument disputing the type and quantum of evidence necessary to establish the value of stolen property for purposes of a claim under the Act, this was not an element of damages included in the charge.

■■■ When we measure the sufficiency of the evidence, we do so under the law as submitted in the charge if the complaining party did not object to the charge. *See Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex. 2000); *Ancira Enters., Inc. v. Fischer,* 178 S.W.3d 82, 93 (Tex.App.-Austin 2005, no pet.); *O'Connor v. Miller,* 127 S.W.3d 249, 254 (Tex.App.-Waco 2003, pet. denied). Neither party objected at trial that the damages question submitted on Basham's

theft claim omitted an element of damages for the value of the property stolen.[3] Thus, the jury's award of "actual damages" on Basham's theft claim can be upheld only if damages for mental anguish can be recovered under the Act and if there is some evidence to support an award for mental anguish damages.

We have already determined that there is some evidence and factually sufficient evidence to support the jury's award of mental anguish damages for Basham's theft claim. Therefore, we need decide only whether such damages can be recovered under the Act.

■■■ Mental anguish damages are not recoverable as a matter of law for the negligent destruction of property. *City of Tyler v. Likes,* 962 S.W.2d 489, 497 (Tex. 1997); *Petco Animal Supplies, Inc. v. Schuster,* 144 S.W.3d 554, 562 (Tex.App.-Austin 2004, no pet.); *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.,* 979 S.W.2d 730, 754 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Rather, "[m]ental anguish damages are recoverable for some common law torts that generally involve intentional or malicious conduct such as libel." *Likes,* 962 S.W.2d at 495. Thus, the Supreme Court has upheld an award of mental anguish damages under section 4.402 of the UCC for wrongful dishonor where the jury found that the bank acted with malice. *See Farmers & Merchants State Bank of Krum v. Ferguson,* 617 S.W.2d 918, 921 (Tex.1981); *see also Luna*

---

**2.** The DTPA currently provides that a prevailing plaintiff may recover "economic damages." Tᴇx. Bᴜs. & Cᴏᴍ.Cᴏᴅᴇ Aɴɴ. § 17.50(b)(1) (Vernon Supp.2006). Before 1995, the statute provided for the recovery of "actual damages." *See* Act of May 29, 1989, 71st Leg., R.S., ch. 380, § 2, 1989 Tex. Gen. Laws 1490, 1491 (amended 1995). Although the statutory language has changed, Texas courts continue to treat the term "economic damages" as synonymous with "actual damages." *See,*

*e.g., Dal–Chrome Co. v. Brenntag Sw., Inc.,* 183 S.W.3d 133, 143–44 (Tex.App.-Dallas 2006, no pet.); *Matheus v. Sasser,* 164 S.W.3d 453, 458–59 (Tex.App.-Fort Worth 2005, no pet.); *Garza v. Chavarria,* 155 S.W.3d 252, 257 n. 2 (Tex.App.-El Paso 2004, no pet.).

**3.** Instead, Appellants objected that Basham should not be allowed to recover mental anguish damages for her theft claim.

v. *N. Star Dodge Sales, Inc.*, 667 S.W.2d 115, 117 (Tex.1984) (mental anguish damages under DTPA upheld where jury found defendant acted knowingly).

■ Consistent with these decisions, the Fourteenth Court of Appeals has concluded:

> where a claim of mental anguish is based solely upon property damage resulting from gross negligence, recovery is contingent upon evidence of some ill-will, animus, or design to harm the plaintiff personally. We believe this rationale is more consistent with the general principle that emotional distress is not usually recoverable as an element of property damages unless an improper motive is involved.

*Seminole Pipeline*, 979 S.W.2d at 757.

■ Here, the jury found that Beaumont and Bellhouse acted with malice when they committed (or conspired to commit) the theft. Appellants do not challenge this malice finding. Therefore, because the jury found that Appellants acted with malice, we hold that Basham could recover mental anguish damages under the Theft Liability Act. *See Likes*, 962 S.W.2d at 495; *Luna*, 667 S.W.2d at 117; *Farmers & Merchants State Bank*, 617 S.W.2d at 921; *Petco Animal Supplies*, 144 S.W.3d at 562; *Seminole Pipeline*, 979 S.W.2d at 757. Accordingly, we overrule Appellants' fifth issue.

Having determined that the evidence supports the jury's award of mental anguish damages under the Act, we now address Appellants' sixth issue, in which Appellants contend that Basham can re-

cover only $1,000 as additional damages under the express terms of the Act.[4]

Section 134.005(a)(1) provides that "a person who has sustained damages resulting from theft may recover" actual damages and additional damages "in a sum not to exceed $1,000." Tex. Civ. Prac. & Rem. Code Ann. § 134.005(a)(1).

We agree with Appellants that, under the plain language of section 134.005(a)(1), a prevailing plaintiff may recover no more than $1,000 in additional damages under the Act. Therefore, we sustain Appellants' sixth issue in part.

**Loss of Reputation**

Appellants contend in their fourth issue that there is no evidence to support the jury's award of damages for loss of reputation.

■ "Our law presumes that statements that are defamatory *per se* injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation." *Bentley*, 94 S.W.3d at 604.

■ Here, Appellants do not contest that the statements at issue were defamatory *per se*. Basham testified that the defamatory statements jeopardized the reputation she had established during her fifteen-year career in the banking industry. We hold that Basham's testimony about the reactions she observed and the "whispering" she heard in the community after these statements were made supports the jury's award of $50,000 in damages for loss of reputation. *See id.* at 604–07 (observing that "the evidence sup-

---

**4.** Because we have determined that the jury's malice finding and the evidence on mental anguish provide a sufficient basis to uphold the award of mental anguish damages, we need not address Appellant's initial conten-

tion in their sixth issue, namely, that Basham cannot recover additional damages under the Act because she failed to prove up actual damages.

port[ed]" an award of $150,000 in damages for loss of reputation).

Accordingly, we overrule Appellants' fourth issue.

### Attorney's Fees

Appellants contend in their ninth issue that there is no evidence or factually insufficient evidence to support the attorney's fee award.

Section 134.005(b) of the Act provides that a prevailing plaintiff may recover "reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM.CODE ANN. § 134.005(b) (Vernon 2005).

Here, Basham's counsel testified that Basham and his firm have a contingent fee contract whereby counsel would receive one-third of any recovery.[5] Counsel testified that he charges $200 per hour and that his billing records indicated that approximately $190,000 in attorney's fees had been incurred at the time of trial. He stated that these fees were reasonable and necessary and consistent with the customary rate in the Cleburne area. Counsel concluded by estimating that about two-fifths of these attorney's fees were attributable to Basham's theft and sexual harassment claims. Appellants made no objection to counsel's testimony on this issue.

Appellants' counsel testified to his attorney's fees as well. Appellants' counsel testified that he believed $240 per hour to be a reasonable attorney's fee for this type of case. Appellants' counsel testified that

approximately $113,000 in attorney's fees had been incurred on Appellants' behalf at the time of trial.

■■■■ Appellants now contend that the testimony of Basham's counsel is not competent evidence to support the attorney's fee award because the testimony is wholly conclusory. Although an objection must be made to challenge the reliability of an expert's testimony, no trial objection is required "[w]hen the testimony is challenged as conclusory or speculative and therefore non-probative on its face." *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). Expert testimony is considered "conclusory or speculative" when it has no factual substantiation in the record. *See United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 463–64 (Tex.App.-Dallas 2005, no pet.); *Gabriel v. Lovewell*, 164 S.W.3d 835, 846 (Tex.App.-Texarkana 2005, no pet.).

■■■■ Here, Basham's counsel's testimony is supported by his billing records and his stated familiarity with attorney's fees charged in the area.[6] Thus, we reject Appellants' contention that counsel testimony is conclusory on its face. *See Hachar v. Hachar*, 153 S.W.3d 138, 143 (Tex. App.-San Antonio 2004, no pet.); *Marquez v. Providence Mem'l Hosp.*, 57 S.W.3d 585, 596 (Tex.App.-El Paso 2001, pet. denied).

■■■■ Counsel testified that $200 was a reasonable hourly rate for the area and that $190,000 was a reasonable and necessary attorney's fee for his representation.

---

**5.** According to the terms of the contract, which was admitted in evidence, counsel will receive 40% of any recovery because an appeal has been pursued.

**6.** Basham's counsel testified that his $200 hourly rate was reasonable and "probably lower than customary based on my asking a number of attorneys in this Cleburne area."

Conversely, Appellants' counsel stated that his hourly rate was $240 "which I believe to be a reasonable fee ... for this type of case in Johnson County." Appellants' counsel, whose office is in Denton County, provided no basis in his testimony to conclude that he was familiar with the customary rate charged by attorneys in Johnson County.

Counsel offered his billing records to support his testimony. Counsel also segregated his attorney's fees to the point that approximately two-fifths were attributable to Basham's sexual harassment and theft claims, the two claims then pending for which the jury could award attorney's fees.

The court subsequently granted Basham's oral motion to dismiss her sexual harassment claim. Thus, the jury awarded attorney's fees of approximately one-fifth the amount counsel testified to.

Because the jury awarded approximately one-half of the attorney's fees requested and because Appellant's counsel testified that an hourly rate twenty percent higher than Basham's counsel charged was reasonable, we hold that there is some evidence and factually sufficient evidence to support the attorney's fee award of $40,000. *Cf. Cantu v. Moore,* 90 S.W.3d 821, 825 (Tex.App.-San Antonio 2002, pet. denied) (upholding award of trial attorney's fees where jury "made its own calculation" regarding amount of attorney's fees incurred during trial and added those to attorney's fees incurred before trial).

Accordingly, we overrule Appellants' ninth issue.

## Special Exceptions

■ Appellants contend in their first issue that the court abused its discretion by denying their special exceptions to Basham's pleadings on her claim of defamation. Specifically, they contend that Basham should have pleaded the alleged defamatory statements with more particularity.

Appellants filed special exceptions in response to Basham's second amended petition. The court overruled Appellants' special exceptions. Basham then filed a third amended petition which made essentially the same allegations which were the object of Appellants' special exceptions. However, Appellants did not renew or reurge their special exceptions.

■ Basham contends that, because they did not, they have not preserved this issue for appellate review. Our research discloses at least two cases which support Basham's position. *See Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 404 n. 3 (Tex.App.-Houston [1st Dist.] 2005, pet. denied); *State ex rel. White v. Bradley,* 956 S.W.2d 725, 744–45 (Tex.App.-Fort Worth 1997), *rev'd on other grounds,* 990 S.W.2d 245 (Tex.1999). The approach taken in these cases is similar to the well-established rule that any error in the admission of evidence is deemed harmless if the same or similar evidence is subsequently admitted without objection. *See Volkswagen of Am., Inc. v. Ramirez,* 159 S.W.3d 897, 907 (Tex.2004).

Thus, we hold that any error in the court's denial of Appellants' special exceptions was rendered harmless by Appellants' failure to reurge their special exceptions in response to Basham's third amended petition. *See Alpert,* 178 S.W.3d at 404 n. 3; *Bradley,* 956 S.W.2d at 744–45.

Accordingly, we overrule Appellants' first issue.

## Jury Charge

■ Appellants contend in their second issue that the court abused its discretion by submitting a single question in the charge for multiple slander allegations.

Rule of Civil Procedure 277 provides in pertinent part, "In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions." Tex.R. Civ. P. 277. Appellants contend in essence that broad-form submission is infeasible when a plaintiff alleges two or more defamatory statements. They cite *Crown Life Insur-*

ance Co. and *Harris County v. Smith* for the proposition that the charge as submitted was erroneous because it cannot be determined whether the jury based its verdict on an invalid theory of liability. *Harris County v. Smith*, 96 S.W.3d 230, 233–34 (Tex.2002); *Crown Life Ins.*, 22 S.W.3d at 388–89. We disagree.

The cited cases are distinguishable from this case because in the cited cases, the appellants actually identified the "invalid theory of liability." In *Crown Life Insurance*, the invalid theories were four of the five DTPA claims submitted in a single question which were invalid because the plaintiff did not have standing as a consumer to bring them. *See* 22 S.W.3d at 388. In *Smith*, the invalid theories were damages claims for loss of earning capacity as to one plaintiff and physical impairment as to the other, which claims were invalid because there was no evidence to support them. *See* 96 S.W.3d at 232.

In both cases, *after* the charge errors were identified, the issue became whether these errors could be found harmless because both charges contained valid theories of liability which could conceivably support the jury's respective verdicts. The Supreme Court concluded that, when a single question in the charge combines valid and invalid theories of liability, the error in submitting the invalid theory "is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding." *Crown Life Ins.*, 22 S.W.3d at 389; *accord Smith*, 96 S.W.3d at 233–34.

Here, the defamation question essentially identifies three different defamatory statements which Basham alleges to have been made. Appellants do not identify any of these statements as being an invalid basis for recovery either because it is not defamatory as a matter of law or because there is no evidence in the record to show

that they made the statement. Rather, Appellants argue that the combination of these statements in a single question presents an issue of "potential error." However, the Supreme Court clearly stated in *Smith* that the harmless error rule announced in *Crown Life Insurance* and *Smith* applies only to "actual errors" and not to "imagined or potential ones." *See* 96 S.W.3d at 235.

Accordingly, we overrule Appellants' second issue.

### Prejudgment Interest

Appellants contend in their tenth issue that the court erred by the manner in which it calculated prejudgment interest because, as argued in other issues, the amount of compensatory damages awarded is excessive. However, we have overruled each of Appellants' issues challenging the amount of compensatory damages awarded. Accordingly, we overrule Appellants' tenth issue.

### Cumulative Harm

■ Appellants contend in their eighth issue that the court committed several errors which resulted in "cumulative harm" because the court allowed "the case to be tried generally on the issue of whether or not Linda Beaumont was a bad person."

Appellants argue that the court erred by: (1) denying their special exceptions; (2) denying their summary judgment motion(s); and (3) admitting irrelevant evidence of "bad acts supposedly committed by Beaumont." We have already determined that Appellants have not preserved their challenge to the denial of their special exceptions. They acknowledge that the erroneous denial of a summary judgment motion "is generally not itself subject to review for reversible error." Accordingly, we construe their eighth issue as a

contention that the repeated admission of evidence of bad acts caused cumulative harm.

Basham responds that evidence of other bad acts was relevant and admissible under Rule of Evidence 404(b) to show malice and to show that Beaumont engaged in a pattern of discriminatory conduct in the workplace.

Appellants complain that the court abused its discretion by admitting the following evidence:

(1) that company policy strictly prohibits the consumption or use of alcoholic beverages or illegal substances while on company property, that an employee of the Ranch was not disciplined for smoking marihuana on the premises, and that Beaumont instructed the staff "not to bother" her with these allegations;

(2) that company policy prohibits sexual harassment, that several employees had reported being subjected to some form of sexual harassment (which reports Beaumont largely denied having been made), and that Beaumont had not taken disciplinary action in most cases;

(3) that Beaumont had instructed Basham and another employee to "sleep with the chef" so he would "keep his hands off the girls in the kitchen";

(4) that Beaumont had instructed employees to spread rumors about the local mayor because Bellhouse had been given a ticket for violating a municipal ordinance;

(5) that Beaumont had instructed Williams to lie at a Texas Workforce Commission hearing on a sexual harassment claim so the complainant would not prevail and that in Beaumont's opinion the complainant "didn't deserve a dime";

(6) that "many" of an employee's paychecks from the Ranch were returned due to insufficient funds;

(7) that Beaumont, in one employee's opinion, is "evil personified" and "one of the cruelest, most vile people I've ever met";

(8) that Beaumont would encourage employees to perjure themselves (as she did with Williams) to retaliate against other employees who registered complaints;

(9) that the Ranch had failed to pay a contractor's bill in full for some projects;

(10) that Beaumont had instructed this same contractor to look in a terminated employee's house on the Ranch property (and kick in a locked bedroom door) to find a notebook with information about a recent event at the Ranch; and

(11) that this terminated employee was owed several thousand dollars by the Ranch for company expenses he had charged to his own credit card.

As Appellants summarize this testimony, it allowed Basham "to try Beaumont generally as a bad person who allegedly slandered the mayor, didn't put a stop to crude behavior from her employees, and failed to discipline drug abusers on her property."

■■■ Evidence of extraneous conduct is admissible under Rule 404(b) to show malice in a defamation suit. *See Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1117–18 (8th Cir.1999). An employer's pattern of behavior can be probative of whether the employer engaged in unlawful employment practices. *See Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 389 (Tex.2005) (per curiam); *Passons v. Univ. of Tex.*, 969 S.W.2d 560, 564 (Tex. App.-Austin 1998, no pet.); *Durbin v. Dal–*

*Briar Corp.,* 871 S.W.2d 263, 268–69 (Tex. App.-El Paso 1994, writ denied).

Therefore, we cannot say that the court abused its discretion by admitting the evidence complained of. Accordingly, we overrule Appellants' eighth issue.

### Conclusion

We reverse that portion of the judgment awarding additional damages of $10,000 under the Theft Liability Act and render judgment that Basham recover $1,000 in additional damages under the Act. The remainder of the judgment is affirmed.