

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00036-CV

_____

JACK R. DUNN, Appellant

V.

BROOKE JENNINGS PARKER AND ASHLEY NICOLE JENNINGS, Appellees

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2018-10469-CCL

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Three months before his mid-2017 death, James A. Jennings purchased a 2004 pickup truck and a 2004 fifth-wheel travel trailer for $28,000.00. Finding that, one month before Jennings' death, Jack R. Dunn converted the truck and trailer from Jennings, the trial court first granted a partial default judgment against Dunn in favor of the distributees of Jennings' estate, Brooke Jennings Parker and Ashley Nicole Jennings (the Appellees), and then granted a complete final judgment. We modify the trial court's judgment to limit statutory damages under the Texas Theft Liability Act (the Act) to $1,000.00 and otherwise affirm the judgment because (1) refusing to set aside the partial default judgment was within the discretion of the trial court, and (2) sufficient evidence supports the award of actual damages and attorney fees, but (3) the Texas Theft Liability Act limits its statutory damages to $1,000.00.

Two months after Jennings' death, Dunn applied for titles to the truck and travel trailer and represented that he had purchased them from Roger Bagley. Thereafter, the Appellees filed suit against Dunn seeking damages and equitable relief for conversion, fraudulent transaction, common law fraud, and violation of the Act and a declaratory judgment that they were the lawful owners of the truck and travel trailer. Appellees joined the Texas Department of Motor Vehicles (DMV), seeking to get titles issued in their names.

When Dunn failed to answer the lawsuit, the trial court entered a partial default judgment granting Appellees' petition for declaratory judgment, decreeing Appellees were the rightful owners of the truck and travel trailer, and ordering the DMV to cancel the titles previously issued to Dunn. Dunn then filed a motion for new trial and asked the trial court to set aside the partial

2

default judgment. After a hearing, the trial court denied Dunn's motion and reaffirmed its judgment that Appellees were the rightful owners of the truck and travel trailer. Appellees then filed a motion for final judgment, and the trial court entered a final judgment, based on the pleadings on file and the evidence before the court, against Dunn incorporating its prior default declaratory judgment for conversion and added common law fraud and violation of the Act. In its final judgment, the trial court:

1.      declared Appellees to be the rightful owners of the truck and travel trailer;

2.      ordered the DMV to cancel the titles to the truck and travel trailer issued to Dunn;

3.      ordered the DMV to issue new titles to the truck and travel trailer to Appellees, jointly;

4.      ordered that a writ be issued for the seizure of the truck and travel trailer and their contents and delivery of the same to Appellees;

5.      awarded Appellees $14,160.00 in attorney fees under the Act; and

6.      awarded Appellees $28,000.00 in actual damages and $28,000.00 in additional statutory damages under the Act, payable only if the truck and travel trailer and their contents were not returned to Appellees.

Dunn did not object to the motion for final judgment or file a motion for new trial or other post-judgment motion in the trial court.

On appeal, Dunn complains that the trial court erred in not setting aside the partial default judgment and that insufficient evidence supported the award of damages and attorney fees.

3

*(1)* *Refusing to Set Aside the Partial Default Judgment Was Within the Discretion of the Trial Court*

First, we address Dunn's contention that the trial court erred by not setting aside the partial default judgment.

We review for an abuse of discretion a trial court's refusal to set aside a default judgment and grant a new trial. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam). A trial court abuses its discretion when the party moving for a new trial after default judgment meets all three elements of the test set forth in *Craddock v Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). *Lerma*, 288 S.W.3d at 926. Under *Craddock*, to have a default judgment set aside, the defendant must show that (1) his or her failure to answer was not intentional or the result of conscious indifference, but was due to mistake or accident, (2) his or her motion sets up a meritorious defense, and (3) granting the motion will not cause a delay or otherwise injure the plaintiff. *Craddock*, 133 S.W.3d at 126. If the defendant fails to meet any prong of the *Craddock* test, we will not find an abuse of discretion. *O'Connell v. O'Connell*, 843 S.W.2d 212, 218 (Tex. App.—Texarkana 1992, no writ). When the evidence is controverted, the trial court determines the credibility of the witnesses and the weight to be given their testimony. *Munson v. State*, 576 S.W.2d 440, 441 (Tex. App.—Austin 1978, writ ref'd n.r.e.) (per curiam).

"[C]onscious indifference" is "something other than an intentional failure to appear." *O'Connell*, 843 S.W.2d at 217 (quoting *Johnson v. Edmonds*, 712 S.W.2d 651, 652 (Tex. App—Fort Worth 1986, no writ). Further, a default judgment may be upheld under this prong of the *Craddock* test when "the defendant failed 'to take some action which would seem indicated to a

4

person of reasonable sensibilities under the same circumstances.'" *Id*. (quoting *Johnson*, 712 S.W.2d at 652–53).

In this case, Dunn filed his affidavit and the affidavit of his wife, Lisa, in support of his motion to set aside the partial default judgment. The affidavits, which were almost identical, avowed that, after Dunn was sued, Vernard Solomon was hired to defend him, that Solomon told them he would take care of it, that Dunn and Lisa both thought Solomon was going to defend the case, and that they were surprised when they got the letter about the default judgment.

Nevertheless, the evidence at the hearing on Dunn's motion showed that both Dunn and Lisa knew that Solomon had been in an automobile accident on September 7, 2018, the same day that Lisa had spoken to him about representing Dunn in the lawsuit.[1] They also both knew that Solomon had died from his injuries on September 19, 2018, and that Solomon's legal assistant, Tiffany Robbins, had secured an agreement to extend the time for Dunn to file an answer until September 24, 2018. Dunn and Lisa also testified at the hearing that, after Solomon's death, they thought that Solomon's son, Coke, was handling the paperwork that needed to be filed based on text messages and a Facebook message[2] that Lisa exchanged with Robbins. However, Dunn admitted that they had never talked with Coke, hired him as an attorney, or paid him any money and that no one ever told him that Coke was his attorney. Dunn also admitted to knowing that Coke was the Criminal District Attorney at that time and that Coke did not work for Solomon. In addition, Dunn admitted that, from September 19 until December 21, 2018, when the default

---

[1]Dunn testified that he was a truck driver and was never home, so Lisa handled hiring an attorney.

[2]An undated Facebook message purportedly sent from Robbins to Lisa states, "Also, I have [your] papers an answer has been done [although] Coke advised if it went any further [you] would have to get another attorney."

5

judgment was entered, he never talked to, or paid any money to, any attorney to represent him. Lisa also testified that she had attempted to contact Coke at the District Attorney's office, but never got through to him.

Robbins testified that Lisa had come to talk with Solomon about filing an answer, but she did not know if they agreed that he would represent Dunn. After Solomon had his accident later that day, Robbins obtained an extension of time to file an answer and communicated this to Lisa. When Coke was attempting to close down his father's office after his father died, Robbins talked with him about Dunn's case, and he told her that Dunn needed to hire another attorney. Robbins testified that she left a voicemail message for Lisa[3] on November 7, 2018, stating that they needed to get another attorney and to file an answer within seven days. She denied that she communicated anything to Lisa on Facebook and did not remember telling Lisa that an answer had been prepared.

Contrary to Lisa's testimony that she had paid Solomon $300.00 to represent Dunn, Coke testified that, when he was closing down his father's office, he did not find a contract of employment or any indication that any payment had been made in this case. He testified that Solomon always gave receipts for cash received and that there was no receipt for Dunn in Solomon's receipt book. He also testified that $300.00 would not have been a reasonable fee and that Solomon would have charged a lot more than that for this case. He acknowledged that he talked with Robbins about the Dunns after the attorney for the Appellees called, but he told Robbins that the Dunns needed to get another attorney. He denied that he ever told Robbins that

---

[3]Lisa testified that she did not have her voicemail set up.

6

an answer had been prepared. He also testified that he had never seen or spoken to the Dunns before the day of the hearing.

All of the text messages between Lisa and Robbins beginning on September 4, 2018, and ending January 2, 2019, were also introduced into evidence. Many of the messages regarded personal matters or matters unrelated to this case. The majority of the messages were from Lisa to Robbins, with Robbins responding periodically. In a few of Robbins' messages, she assured Lisa that they were okay, which Robbins testified meant that she had secured an extension of time to answer the lawsuit. Further, although there were regular messages concerning the papers in this suit in September and October, the last message from Lisa inquiring about the papers before the default judgment was sent November 1; in that message, she said that she would go by to see Coke to find out where her papers were. Then, on January 2, 2019, ten days after the default judgment was entered,[4] Lisa wrote,

> Still waiting on my papers I have called coke soloman [sic] numerous times talked to [Solomon]'s wife at office she said she would get with coke to get them still no papers. . . . CALLS TO COURT HOUSE STILL NO PAPERS. [SOLOMON] TEUSTED [sic] YOU TO BE HIS SECRETARY AND AS HIS EMPLOYEE I HAVE TRUSTED YOU NOW I AM WONDERING WHAT HE IS THINKING LOOKING DOWN ON YOU.

In light of Dunn's and Lisa's admissions that they knew in September that Solomon had not filed an answer before he died and that they had never spoken with Coke and had not been told that he was defending the case, the trial court found incredible both (a) Dunn's and Lisa's original affidavit

---

[4]The district clerk is required to mail written notice of the default judgment "[i]mmediately upon the signing of the judgment." TEX. R. CIV. P. 239a. Lisa and Dunn testified that they received the notice, but it is unclear when it was received.

testimony that they depended on Solomon to file the answer and (b) their later testimony that they thought Coke was filing an answer. Because of the contradictions in Lisa's testimony, the trial court could also have reasonably discounted Lisa's testimony that she did not receive the voicemail message left by Robbins November 7 informing her that they needed to retain another attorney and file an answer within seven days. The sudden absence of text messages regarding the case after November 1 until after the default judgment was entered also lends support to an inference that Lisa received that message. The trial court could also have reasonably believed, because of the contrast in the tone of the message from prior messages, that the January 2 message was sent after Lisa received the notice of default judgment. Consequently, the trial court could have reasonably concluded that Dunn, knowing that his answer was due and that he needed to retain another attorney, was consciously indifferent to his obligation to do so.

Based on this record, we find that the trial court could have properly found that Dunn did not act as a reasonable person would have in similar circumstances and that he exhibited conscious indifference to filing an answer. Consequently, Dunn failed to meet the first prong of the *Craddock* test. *See O'Connell*, 843 S.W.2d at 218. Therefore, the trial court did not abuse its discretion by not setting aside the partial default judgment. We overrule this issue.

*(2)     Sufficient Evidence Supports the Award of Actual Damages and Attorney Fees*

Dunn also challenges the sufficiency of the evidence supporting the trial court's award of actual damages, attorney fees, and statutory damages. Statutory damages will be addressed in a subsequent section of this opinion.

8

In determining legal sufficiency of the evidence, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 582 (Tex. App.—Texarkana 2012, no pet.). In looking at the evidence, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller*, 168 S.W.3d at 827. The evidence is legally insufficient if (1) there is a complete absence of evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a mere scintilla of evidence offered to prove a vital fact, or (4) the opposite of the vital fact is conclusively established by the evidence. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). More than a scintilla of evidence exists when the evidence reaches a level enabling reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

When reviewing a finding for factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the verdict only "if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In our review, we must credit evidence favorable to the finding if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Hampden*

9

*Corp. v. Remark, Inc.*, No. 05-13-00529-CV, 2014 WL 2921655, at *6 (Tex. App.—Dallas Jun. 25, 2014, pet. denied) (mem. op.) (citing *Wilson*, 168 S.W.3d at 827).

Dunn challenges the sufficiency of the evidence of actual damages. Admittedly, there was not much evidence on that point. Admitted into evidence without objection was a bill of sale from Bagley to Jennings dated April 14, 2017, about two months before Dunn took possession of the truck and trailer, reciting that Jennings paid $28,000.00 for the truck and trailer in Harrison County. Dunn also admitted that Jennings had paid $28,000.00 for the truck and trailer.

In this case, the trial court awarded actual damages of $28,000.00. Under the Act, a trial court may award "actual damages." TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(a). Although the Act does not define "actual damages," it has been held that "'actual damages' under the Act are those recoverable at common law." *Beaumont v. Basham*, 205 S.W.3d 608, 619 (Tex. App.—Waco 2006, pet. denied). "Generally, the measure of damages for conversion [at common law] is the fair market value of the property at the time and place of the conversion." *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex. 1997) (per curiam) (citing *Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex. 1982) (per curiam)). "In determining both fair market value and actual value, courts have considered the purchase price paid by an owner, particularly when evidence of the purchase price is neither objected to nor controverted." *Burns v. Rochon*, 190 S.W.3d 263, 270 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Wutke v. Yolton*, 71 S.W.2d 549, 552 (Tex. App.—Beaumont 1934, writ ref'd); *San Antonio Pub. Serv. Co. v. Murray*, 59 S.W.2d 851, 854 (Tex. App.—Beaumont 1933), *writ dism'd*, 90 S.W.2d 830 (Tex. 1936)); *see also Pike v. Tex. EMC Mgmt. LLC*, No. 10-14-00274-CV, 2017 WL 2507783, at *17–18 (Tex.

10

App.—Waco June 7, 2017, pet. granted); *Marley v. Wallace*, No. 12-01-00225-CV, 2002 WL 31761150, at *3 (Tex. App.—Tyler, Dec. 11, 2002, no pet.). Testimony regarding purchase price that is both unobjected to and uncontroverted has been held to be both legally and factually sufficient evidence of fair-market value and actual value. *See Burns*, 190 S.W.3d at 271. *But cf. Henson v. Reddin*, 358 S.W.3d 428, 437 (Tex. App.—Fort Worth 2012, no pet.) ("Testimony and evidence regarding purchase price, however, standing alone, is not factually sufficient to support a fair-market-value damages award or an actual-value damages award.").[5]

In this case, the evidence showed that Jennings purchased the truck and travel trailer three months before his death, that the conversion by Dunn occurred about two months after the purchase by Jennings, and that the purchase occurred in the same county as the conversion by Dunn. Dunn did not object to this evidence. Because of the used nature and the age of the truck and trailer when purchased by Jennings and the relatively short period of time between his purchase and the conversion by Dunn, it was likely that very little, if any, depreciation in value occurred. No controverting evidence of the fair-market value or actual value was introduced. Under this record,

---

[5]Dunn argues that it is improper to base an award of market value on the cost of the property, citing *Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 668–69 (Tex. 1996). In *Redman*, the only evidence of the value of a mobile home was the owner's testimony that he had paid $43,000.00 for the home ten months before the fire. At the Texas Supreme Court, the owner conceded that his testimony was not admissible to show the market value of the home at the time of the loss. *Id.* at 668. Therefore, the Texas Supreme Court did not reach the question of whether the testimony was legally insufficient to support the damage award. We also note that, in the two court of appeals cases cited by the *Redman* court, the testimony regarding purchase price concerned purchase of the personal property twenty, and three and one-half, years before the torts occurred and that objections to the admission of the evidence were made at trial. *See Rosenfield v. White*, 267 S.W.2d 596, 597, 600–01 (Tex. App.—Dallas 1954, writ ref'd n.r.e.); *San Antonio Pub. Serv. Co. v. Murray*, 59 S.W.2d 851, 854 (Tex. App.—Beaumont 1933), *writ dism'd*, 90 S.W.2d 830 (Tex. [Comm'n Op.] App. 1936). A salient factor in those cases was that the purchase of the property was remote in time from the occurrence of the torts. *Murray*, 59 S.W.2d at 854. The purchase here was much closer in time to the conversion.

we find that legally and factually sufficient evidence supported the trial court's award for actual damages. *See Henson*, 358 S.W.3d at 437–38; *Burns*, 190 S.W.3d at 271.

Dunn also complains that the judgment provided for the issuance of a writ for seizure of the truck and trailer and their contents under Rule 308 of the Texas Rules of Civil Procedure. Dunn argues that the seizure was not authorized under Rule 308, since there was no evidence showing that the truck and trailer had any special value to the Appellees. *See* TEX. R. CIV. P. 308. Even if the trial court's authority under Rule 308 was not shown, the trial court nevertheless had the power to enforce its own judgment by writ of execution or other process. TEX. R. CIV. P. 621. We reject this contention by Dunn. Likewise, Dunn's complaint that the judgment conditions the damage award on the failure to return the truck and travel trailer is without merit. *See, e.g.*, *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985) (per curiam) (recognizing validity of a conditional judgment).

Dunn also complains that the award of attorney fees must be reversed because Appellees failed to segregate their fees between those causes of action for which attorney fees were recoverable and those causes of action for which they were not recoverable. Under Texas law, recovery of attorney fees is not allowed unless allowed by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). Consequently, claimants are ordinarily required to segregate their attorney fees between claims for which attorney fees are recoverable and claims for which they are not. *Id*. at 311. Nevertheless, to preserve for appeal a complaint that attorney fees were not segregated, the complaint must be made in the trial court. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *Holmes v. Concord Homes, Ltd.*, 115 S.W.3d 310, 313 (Tex. App.—Texarkana 2003, no pet.). Dunn made no complaint in the trial court regarding

Appellees' failure to segregate their attorney fees. Consequently, Dunn has failed to preserve this complaint.

In addition, Dunn complains that, since there was legally insufficient evidence of actual damages, Appellees could not recover attorney fees. We have previously determined that there was sufficient evidence to support the award of actual damages under the Act. The Act provides, "Each person who prevails in a suit under this chapter shall be awarded . . . reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(b). A party who successfully prosecutes a cause of action under the Act, or who successfully defends against it, is a prevailing party. *Brinson Benefits, Inc. v. Hooper*, 501 S.W.3d 637, 641–42 (Tex. App.—Dallas 2016, no pet.). As the prevailing party, Appellees were entitled to their reasonable and necessary attorney fees. We overrule this complaint.

Finally, Dunn complains that Appellees were not entitled to attorney fees because they did not plead for attorney fees in their petition. "Absent a mandatory statute, a trial court's jurisdiction to render a judgment for attorney's fees must be invoked by pleadings, and a judgment not supported by pleadings requesting an award of attorney's fees is a nullity." *Good v. Baker*, 339 S.W.3d 260, 266 (Tex. App.—Texarkana 2011, pet. denied) (quoting *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.)). An award of attorney fees to the prevailing party under the Act is mandatory. *Moore v. Amarillo-Panhandle Humane Soc'y, Inc.*, 541 S.W.3d 403, 405 (Tex. App.—Amarillo 2018, pet. denied) (citing *Arrow Marble, LLC v. Killion*, 441 S.W.3d 702, 705 (Tex. App.—Houston [1st Dist.] 2014, no pet.)).

13

Since the recovery of attorney fees is mandatory under the Act, it was not necessary for Appellees to plead for attorney fees in their petition. *See Good*, 339 S.W.3d at 266.

Further, Appellees pled for attorney fees under the Act in their motion for final judgment. A motion for attorney fees constitutes a written pleading supporting the award of attorney fees. *Id.* at 267. Therefore, Appellees' plea for attorney fees contained in their motion for final judgment supported the trial court's award of attorney fees.

*(3)    The Texas Theft Liability Act Limits Its Statutory Damages to $1,000.00*

In its judgment, the trial court also awarded conditional statutory damages under the Act of $28,000.00. Dunn points out that, under the Act, additional statutory damages may not exceed $1,000.00. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(a). Appellees agree that the trial court erred in this regard and ask this Court to modify the judgment to reflect an award of $1,000.00 in additional statutory damages.

Dunn argues that statutory damages are generally considered punitive damages and that conduct sufficient to warrant punitive damages is not admitted by default. *See Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 463–64, 467 (Tex. 2016) (holding that civil penalty of up to $1,000.00 per day under the Texas Optometry Act is exemplary damage as used in Sections 41.002(a) and 41.004(a) of the Texas Civil Practice and Remedies Code); *In the Matter of Gober*, 100 F.3d 1195, 1205 (5th Cir. 1996) (noting that "conduct sufficient to warrant punitive damages is not regarded as admitted by default" (citing *Sunrizon Homes, Inc. v. Fuller*, 747 S.W.2d 530, 534 (Tex. App.—San Antonio 1988, writ denied)). Dunn contends that there was no evidence of his conduct warranting exemplary damages.

14

The Texas Supreme Court in *Forte* specifically stated that "whether Chapter 41 [of the Texas Civil Practice & Remedies Code] applies to any of these other statutes [providing for civil penalties] depends on the analysis we have followed here, not simply on a statutory authorization of civil penalties." *Forte*, 497 S.W.3d at 467. Nevertheless, we need not decide whether Chapter 41 applies to the Act since, even if it does, legally sufficient evidence supported the award of additional statutory damages under the Act.

The Act provides, "A person who commits theft is liable for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE ANN. § 134.003(a). "Theft" is defined, *inter alia*, as "unlawfully appropriating property . . . as described by Section 31.03 . . . Penal Code." TEX. CIV. PRAC. & REM. CODE ANN. § 134.002(2). Under Section 31.03 of the Penal Code, a person commits theft if he appropriates property without the effective consent of the owner and with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a), (b)(1). "'Appropriate' means: (A) to bring about transfer or purported transfer of title to . . . property; or (B) to acquire or otherwise exercise control over property other than real property."

In this case, the evidence showed that, shortly before Jennings death, Dunn exercised control over the truck and trailer and denied access to the truck and trailer to the Appellees since that time. In addition, Dunn admitted in open court that he did not purchase the truck and travel trailer from Bagley, but that he nevertheless signed title tranfer papers—representing that he had purchased the truck and travel trailer from Bagley—and thus had caused the truck and trailer to be titled in his name. We find that, even if Chapter 41 applies to the award of additional statutory damages under the Act, this evidence satisfies the requirements of Chapter 41. *See* TEX. CIV.

15

PRAC. & REM. CODE ANN. § 41.011(a).[6]  Consequently, we find that legally sufficient evidence supports the award of additional statutory damages in the amount of $1,000.00.

We reverse that portion of the judgment awarding additional statutory damages of $28,000.00 under the Texas Theft Liability Act and render judgment that Appellees recover $1,000.00 in additional statutory damages under the Act.  We affirm the remainder of the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     September 10, 2019
Date Decided:       September 20, 2019

---

[6]Section 41.011(a) provides:

(a)     In determining the amount of exemplary damages, the trier of fact shall consider evidence, if any, relating to:

(1)     the nature of the wrong;
(2)     the character of the conduct involved;
(3)     the degree of culpability of the wrongdoer;
(4)     the situation and sensibilities of the parties concerned;
(5)     the extent to which such conduct offends a public sense of justice and propriety;
and
(6)     the net worth of the defendant.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.011(a).